IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ESCO LEWIS BLAYLOCK, III, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PROGRESSIVE INSURANCE, | : | NO. 18-396 |
| Defendant. | : | |

## MEMORANDUM

MCHUGH, J.                                                                          FEBRUARY 28, 2018

On January 31, 2018, Plaintiff Esco Lewis Blaylock, III filed this civil action against Progressive Insurance. He also filed a motion to proceed *in forma pauperis*. By Memorandum and Order entered on February 2, 2018, the Court granted Mr. Blaylock leave to proceed *in forma pauperis* and dismissed his Complaint for lack of subject matter jurisdiction. *Blaylock v. Progressive Ins.*, No. 18-396, 2018 WL 692406, at *1 (Feb. 2, 2018). The Court granted Mr. Blaylock leave to amend "in the event he [could] state a plausible claim for relief within this Court's jurisdiction." *Id.* at *2. On February 26, 2018, the Court received Mr. Blaylock's Amended Complaint. (ECF No. 1.) For the following reasons, the Court will dismiss the Amended Complaint.

I.     FACTS

On December 22, 2017, Mr. Blaylock "reported the theft of his vehicle" to Defendant because he believed that his vehicle was stolen from 52nd Street in West Philadelphia. (Am. Compl. at 1.) Mr. Blaylock called a coworker to pick him up. (*Id.*) Subsequently, Mr. Blaylock learned that a "good Samaritan found [his] car keys, near his illegally park[ed] vehicle and moved the car to a safe parking area." (*Id.*) Mr. Blaylock "instructed the good Samaritan to return his vehicle keys and unbeknownst to [him they were] delivered that evening December 22, 2017 at approximately 11:00 pm." (*Id.*)

1

Mr. Blaylock spent the night at his coworker's home because he "had a few cocktails." (*Id.*) The next day, Mr. Blaylock took "a walk to the store and discovered his car not parked in the space it was dropped off at that evening and his car keys missing from his pocket." (*Id.*) After asking people in the area about his vehicle, he "was [met] with violence." (*Id.*) Mr. Blaylock called the Philadelphia Police Department as well as an ambulance because he had head wounds. (*Id.*) He also called Defendant "to report what transpired on December 23, 2017 and was told by the [P]rogressive agent that [P]rogressive cannot dispatch assistance without being escorted by law enforcement due to the violent urban area." (*Id.* at 2.) Mr. Blaylock was then taken to the hospital because of "body and head trauma also suffering a seizure." (*Id.*)

At some point, Mr. Blaylock was "contacted by Progressive agent Cristian Carmichael and special investigator Robin, also from Progressive." (*Id.*) He "was asked questions under recording and . . . did explain to both investigators that he was having difficulties due to the head injury, and his age." (*Id.*) After working with a health care specialist, Mr. Blaylock was able to remember the events of December 23, 2017, which he reported to Defendant. (*Id.*)

Defendant told Mr. Blaylock "to keep in constant contact with the Philadelphia police department, in regards to [his] car not being towed and stored by the police department to evade personal cost and to have [P]rogressive handle such transactions if the [vehicle] was found." (*Id.*) Several days later, investigator Robin informed Mr. Blaylock that his vehicle had been located and that state police had towed it "to B[e]rks County more than two hours in travel distance away." (*Id.*)

Defendant's agent Christian Carmichael subsequently requested personal records from Mr. Blaylock. (*Id.*) In response, Mr. Blaylock "accidentally emailed a personal letter intended for his pastor in the Catholic Church." (*Id.*) Mrs. Carmichael then told Mr. Blaylock that "she felt some type of way . . . disturbed about his email and was spoken to rather bluntly." (*Id.*) Mr. Blaylock asked why the requested information was needed and "was told that [he] was being treated differently despite what was discussed in phone conversations and [his] background." (*Id.*)

2

Mr. Blaylock alleges that he suffered further discrimination when Mrs. Carmichael requested that he "personally travel to two different locations . . . in Philadelphia and [B]erks [C]ounty to have [his vehicle] released." (*Id.*) He told Mrs. Carmichael that he was willing to sign a release form and fax it to Defendant to have his vehicle towed to one of Defendant's facilities "for inspection and an adjuster to contact [him] with details." (*Id.* at 2-3.) According to Mr. Blaylock, Mrs. Carmichael had his vehicle "towed straight to the salvage yard on Pass[y]unk Blvd in Philadelphia" to have the vehicle totaled. (*Id.* at 3.) He went to the salvage yard "to retrieve personal effects and discovered the only damage to the [vehicle] was a broken passenger window and missing car keys, which would have resulted in less than the blue book value of the car to fix." (*Id.*) Mr. Blaylock told Mrs. Carmichael "that he wanted his [vehicle] fixed and not junked in a salvage yard." (*Id.*)

Mr. Blaylock alleges that Defendant's actions violated his rights under the Age Discrimination Act of 1975, Title VI of the Civil Rights Act of 1964, and Section 504 of the Rehabilitation Act because it discriminated against him based upon his "race, color and religion." (*Id.*) As relief, Mr. Blaylock requests "restitution for his vehicle and pain and suffering and damages." (*Id.*)

## II. STANDARD OF REVIEW

As noted above, the Court previously granted Mr. Blaylock leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B) applies, which requires the Court to dismiss the Amended Complaint if it is frivolous, malicious, or fails to state a claim, or seeks relief from an immune defendant. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations

3

omitted). As Mr. Blaylock is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III. DISCUSSION

As noted above, Mr. Blaylock asserts that Defendant violated his rights under the Age Discrimination Act of 1975, Title VI of the Civil Rights Act of 1964, and Section 504 of the Rehabilitation Act. (Am. Compl. at 3.) As discussed below, however, he fails to state a claim under any of these provisions.

The Age Discrimination Act of 1975 provides that "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subject to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102. Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal Financial assistance." 42 U.S.C. § 2000d. Section 504 of the Rehabilitation Act states that

> [n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). Nowhere in his Amended Complaint does Mr. Blaylock allege facts regarding his race, color, age, or claimed disability. Moreover, nothing in his Amended Complaint suggests that Defendant is either the recipient of federal financial assistance or is a program or activity conducted by an executive agency or the United States Postal Service such that it could be liable under any of these three statutes. *See Atamian v. Burns*, 236 F. App'x 753, 755 (3d Cir. 2007) (per curiam) (upholding dismissal of plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) because plaintiff "failed to allege he was denied benefits or was subject to discrimination under any program

4

or activity receiving federal financial assistance as required by the Civil Rights and Agent Discrimination Acts").

For the foregoing reasons, the Court will dismiss Mr. Blaylock's Amended Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Mr. Blaylock's federal claims will be dismissed with prejudice. To the extent the Amended Complaint raises any state law claims, those claims will be dismissed without prejudice to Mr. Blaylock's right to refile them in state court.[1] Mr. Blaylock will not be permitted to file a second amended complaint in this matter, as amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). An appropriate Order follows, which shall be docketed separately.

BY THE COURT:

_____ 2/28/18
**GERALD A. MCHUGH, J.**

---

[1] In its February 2, 2018 Memorandum and Order, the Court concluded that it lacked diversity jurisdiction over any state law claims raised by Mr. Blaylock because he sought "a total of $9,013.65 in damages, an amount far below the $75,000.00 amount in controversy requirement." *Blaylock*, 2018 WL 692406, at *2. Mr. Blaylock's Amended Complaint fails to cure this defect.

5